Bell v. Pelt

---

## BELL V. PELT.

1. VENDOR'S LIEN: *Where land is sold for cotton.*

Where an obligation to deliver cotton is given in the purchase of land, no lien arises in favor of the vendor to enforce its performance. *Harris v. Hanie,* 37 Ark., 348.

51 433
52 442

51 433
60 599

2. EQUITABLE MORTGAGE: *By instrument intended to secure debt.*

Where an instrument is intended to secure a debt by fixing a charge on land which it properly describes, equity will give effect to the intention of the parties by enforcing the lien, although the writing is not in the form of an ordinary technical mortgage and contains neither words of grant or defeasance.

3. SAME: *Same.*

The defendant executed and delivered to the plaintiff an instrument in the following words:

"$320.64. On or by the 1st day of November, 1883, I promise to pay James D. Pelt, or bearer, the sum of three hundred and twenty dollars and sixty-four cents, for value received, with ten per cent. interest from the 1st day of November, 1882. This note given as aid for that of the purchase money of parcel of land, the W½ of NW¼, sec. 21 and the SE¼ of SE¼, sec. 17, and the NE¼ of sec. 20, all in township 15, range 20 west, and vendor's lien is hereby reserved on said land for the purchase money, all the above land being in the county of Columbia and State of Arkansas. This 10th day of January, 1883.

        Witness my hand:                his

                         JOHN M. x BELL.

Witness: J. D. PELT.                mark

*Held:* That such instrument is an equitable mortgage and constitutes a lien on the land it describes.

APPEAL from *Columbia* Circuit Court in Chancery.

C. W. SMITH, Judge.

*J. M. Kelso,* for appellant.

The notes were payable *in cotton* and no vendor's lien can be enforced thereon. 37 Ark., 348. Nor was Pelt the vendor at all and hence could have no lien. No lien was reserved in the deed in favor of the vendor even, and certainly the assignee of the notes had none. Gantt's Dig., sec. 174 and cases cited.

The substitution of a new note with the recital that it was for purchase money, gave no lien.

*Atkinson & Tompkins,* for appellee.

The lien in this case is not the equitable vendor's lien, but

is a lien created by contract of the parties, an equitable mortgage. Review Mansf. Dig., sec. 474; 28 Ark., 401; 37 Ark., 511, 516, 517 and other decisions, and cite 54 Ill., 130; 67 Ill., 34; 2 Head, 151; 3 Ib., 537; 53 Miss., 85; 2 Yerger, 84; 2 Head, 128; 8 Allen, 536; 6 S. W. Rep., 420; 2 Ib., 737; 58 Texas, 383; Story Eq. Jur., secs. 791, 1020, 1231.

HEMINGWAY, J.

The record in this cause discloses about the following state of case. On the 1st day of November, 1879, one W. W. Atkinson sold to the appellant, by warranty deed, for the consideration of nine hundred dollars, the lands in controversy. The deed recites full payment of the consideration in cash, but a part at least was not so paid. The appellant gave Atkinson two or more obligations for the delivery of cotton, and it is probable that the entire consideration was to be so paid. Two of these cotton obligations were assigned by Atkinson to the appellee; the cotton was not delivered according to their terms, and on the 10th of January, 1883, the appellant and appellee had a settlement of the matter, and fixed the sum of $320.64 to be paid on account of them. When the settlement was made, the appellant executed and delivered to the appellee an instrument in the words following:

$320.64. On or by the 1st day of November, 1883, I promise to pay James D. Pelt, or bearer, the sum of three hundred and twenty dollars and sixty-four c'ts, for value received with ten per cent. interest from the 1st day of November, 1882. This note given as aid for that of the purchase money of parcel land, the W ½ of NW ¼, sec. 21, and the SE ¼ of SE ¼, sec. 17, and the NE ¼ of sec. 20, all in

township 15, range 20 west, and vendor's lien is hereby reserved on said land for the purchase money, all of the above land being in the county of Columbia and State of Arkansas.

This the 10th day of January, 1883.

his

Witness my hand

JOHN M. x BELL.

Witness, J. D. PELT.                    mark

In the deed from Atkinson there was no express reservation of a lien. The complaint alleges the execution of the deed, the assignment of purchase money notes, that a lien was reserved in the deed, that the settlement of January 10th, 1883, was made, and asks that the lands be charged with a lien and sold to pay the debts.

The defendant filed a general demurrer with answer.

He contests the claim to a lien; first, because the plaintiff sued as assignee, and no lien was expressly reserved in the deed; second, because obligations to deliver cotton, executed in purchase of land, are not secured by a vendor's lien.

The plaintiff demurred to the answer, his demurrer was overruled and the suit went to final hearing. The court found that the instrument of January 10th, 1883, was intended to be, and in fact was, a mortgage on the land, and accordingly rendered judgment, from which the defendant prosecutes this appeal. As the vendor's lien ·was not expressly reserved in the deed from Atkinson, Pelt as the assignee of Bell's paper could acquire none. Mansfield's Digest, sec. 474 and cases cited. ·As Bell gave no promissory notes in the purchase of the land, but gave contracts to deliver specified quantities of cotton at specified times, there was no vendor's lien even in favor of the vendor. *Harris v. Haynie*, 37 Ark., 348. The decree can find no support in the original transaction. This conclusion requires that we

1. VENDOR'S LIEN: Sale of land for cotton.

determine the character and effect of the instrument of January 10th, 1883, for the decree must stand upon it, if at all. What is the instrument ? It comprises, first, an ordinary promissory note by the appellant to the appellee; second, a recital that it is given "in aid" of the note for purchase money; third, a stipulation that a lien is thereby reserved on the land, which is accurately described. This is not an ordinary, technical mortgage; it contains neither words of grant nor defeasance. Is it an instrument which a court of equity will enforce as an equitable mortgage? Such an instrument has never received the consideration of this court, so far as we are advised. In the case of *Barnett, et al., v. Mason, et al.*, 7 Ark., 254, a bill of sale was offered in evidence and excluded, which contained the statement, "that B. A. & L. are to retain a lien on the boat until the above named notes are discharged." The court say that "the mere allegation in the bill of sale that they retained a lien, cannot be considered a mortgage." Again a note contained this expression : "The tax lien given by law on my property, for which this money was advanced to. pay taxes, I hereby recognize." But the law gave no lien, and as the owner only "recognized" the lien given by law, there was no lien fixed by the notes. *Peay, admr., et al., v. Field*, 30 Ark., 600. A lien was claimed on a crop upon the following expression in a note: "This note constitutes a lien upon the cotton and corn raised upon said land this year." It was held not to create a lien; to be a mere assertion, and not an undertaking. *Roberts, et al., v. Jacks*, 31 Ark., 597. A lease executed by both lessor and lessee, reserving a lien in favor of the lessor on crops to be grown on the demised land, was held to be a chattel mortgage. *Mitchell, et al., v. Badgett*, 33 Ark., 387. A deed recited that "said lands and improvements are

Bell v. Pelt.

held bound for the payment of said two notes." This was held to be an equitable mortgage. *Talieferro's Exr. v. Barnett*, 37 Ark., 511. The recital in a promissory note given for land, that "this note is to stand as a lien on said land until fully paid," was held not to create a mortgage. No precise reason is given for this conclusion. The fact that the expression contains no words of grant is alluded to, but the opinion seems to rest on the reason that controlled in the other cases cited, that the terms used implied the mere sug-gestion of a fact, and not a stipulation, a statement and not an obligation. *Waddell, admr., v. Carlock*, 41 Ark., 523. The defect pointed out in the cases cited was that, while the instrument under consideration contained statements in one form or another, that liens would be or were retained, they indicated no intent to create or fix the liens. They professed to state what were assumed as facts, but indicated no pur-

2. EQUITA-BLE MORT-GAGE. In-strument in-tended to se-cure debt.

pose to accomplish them. The instrument under considera-tion provides that "a vendor's lien is hereby reserved." It is not a recital of what has been done or exists, but is a man-ifest effort, by its own terms and through its own efficiency to produce the result. Mr. Pomeroy says that, where an in-strument manifests an intent to charge or pledge property, real or personal, as security for a debt, and the property is so described that the thing intended to be charged or pledged can be sufficiently identified, it is held that a lien follows. 3 Pom. Eq., sec. 1237. An attempt to create a security in legal form having failed, equity will give effect to the intention of the parties and enforce the lien as an equit-able mortgage. Any agreement that shows an intention to create a lien is in equity a mortgage. 1 Jones on Mort., 168; *Daggett v. Rankin*, 31 Cal., 321. In the case of *Flagg v. Mann*, 2 Sum., 486, Judge Story said, if a transaction re-

solve itself into a security, whatever may be its form, and whatever name the parties may choose to give it, it is in equity a mortgage.

These principles have received a wide, if not universal recognition and application. A purchaser of land executed two notes with sureties, reciting that they were given for land, and providing, "In case I fail to pay said notes, I do bind myself, etc., to convey to said sureties the aforesaid land." Upon default in paying said notes, the sureties were held entitled to a mortgage on the lands. *Courtney v. Scott*, Litt. (Ky.) Sel. cases, 457. So an instrument reciting that the maker had employed counsel to prosecute a claim for certain land, and would at the end of the litigation pay them a certain sum "out of the land," was held to be a mortgage. *Jackson v. Carswell*, 34 Ga., 279. An agreement by the owner to pay the occupant of his land a given sum, conditioned, that if the land should be sold to raise the amount, the occupant would surrender his possession, meantime the use of the land to offset interest, was held to be an equitable mortgage and to charge a lien on the land. *Blackburn v. Tweedie*, 60 Mo., 505. A purchaser gave his obligation for the purchase of land. On the face of the bond and immediately below the seal, it was stated that the land should be liable to the debt until the purchase money was paid. It was held in a suit by the assignee of the bond that it was an equitable mortgage. *Eskridge v. McClure*, 2 Yerg., 84. The owners of land agreed in writing, to pay a sum of money out of the proceeds of sale of land if they were sold; "it being understood and agreed that the debt was a charge on their joint estate in the land." This was held to charge the land with the payment of the debt. *Pinch v. Anthony, et al.*, 8 Allen, 536.

A vendor conveyed by absolute deed, but took the notes of his

purchaser in which a lien was reserved on the lands conveyed. Renewal notes were given, containing similar reservations. It was held in a suit on them, that they constituted a lien on the lands, which a court of equity would enforce. *Helm v. Weaver*, 6 S. W. Rep., 420. A deed contained a stipulation, that, if notes given in purchase of the land conveyed were not paid at maturity, it should be lawful for the sheriff to sell the lands conveyed, to satisfy the notes. The notes were assigned and the assignee brought suit to establish and foreclose a lien on the lands. As the vendor's lien had not passed to the assignee, the case turned upon the clause authorizing the sheriff to sell. It.was contended that this provision constituted neither a mortgage nor deed of trust; that there must be words of grant to constitute either. The court held that although it was not "an ordinary technical mortgage or deed of trust" that it was intended to be a security for a debt, and was therefore an imperfect or equitable mortgage. This decision was placed upon the ground, that courts of equity look through form to the substance of an agreement, and exact no peculiar formula to create a lien on lands. *Moore v. Lackey*, 53 Miss., 85. The case of *Mitchell, et al., v. Wade*, 39 Ark., 377, seems to sustain the doctrine of the cases last cited. Pillow was involved in a lawsuit with the executors of Pointer, affecting the title to lands. A compromise was agreed on, and in order to perfect it, Pillow borrowed money from Wade, a person not interested in the controversy, which was paid the executors. They conveyed to Pillow a tract of land comprising a part of the Defeat Cone place, by deed which contained the following stipulation: "The said G. J. Pillow stipulates and agrees that his portion of the Defeat Cone place shall be still held subject to a lien in favor of Wade." This was held to give Wade a perfect

lien on the land. We are satisfied that Bell intended in the instrument of Jan. 10th, 1883, to fix a charge upon the land. It contravenes no rule of law or public policy, is supported by a valuable consideration, and accurately describes the land. There can be no doubt of its validity as a lien, unless it be necessary in order to create one, to square the instrument by inflexible rules of technical conveyancing. The courts of equity make no such requirements. The findings and judgment of the circuit court were correct, and the judgment is affirmed.