Pine Bluff Hotel Company v. Monk & Ritchie.

## Opinion delivered February 7, 1916.

1. Building contracts—delay in completion—stipulation for liquidated damages.—A building contract provided that the building should be completed by a certain date, and in the event of delay, that the contractor should pay a sum of $100 per day as "liquidated damages by reason of such delay." The contract also contained the following stipulation: "This is understood to be and is a provision for damages liquidated that will be sustained by the owner in the event of delay of completion of said work after Oct 1, 1912, and the same is not a provision for a penalty." Held, the stipulation in the contract was for liquidated damages. and not for a penalty.

2. Building contracts—defective construction—construction according to architect's plans.—When a building contractor performs his work strictly in conformity with plans and specifications, he is not liable for defects in the work that are due to faulty structural requirements contained in such plans and specifications, and the contractor may recover under the contract, unless he has warranted that the plans and specifications are correct.

Appeal from Jefferson Circuit Court; *Antonio B. Grace,* Judge; reversed.

*Bridges & Wooldridge,* for appellant.

1. The intention of the parties govern and is usually conclusive as to whether a sum stipulated to be paid in

case of breach of a contract is liquidated damages or a penalty; the question is one for construction. 8 Ruling Case Law, 560; 56 Ark. 405, 413; 87 *Id.* 545, 553; 104 *Id.* 9-15; 73 *Id.* 432; 69 *Id.* 114; 104 *Id.* 9; 118 Ark. 492; 48 Pa. St. 450. It was error to refuse instruction No. 1 and in giving No. 8. 205 U. S. 105.

2. The hotel company was not liable to the contractors for building the wall the second time, but the contractors were liable to the hotel company in such sum as the proof showed to be the cost of constructing the wall the third time. See as to authority and powers of architects and superintendents, 100 Ark. 166; 87 *Id.* 56; 20 Minn. 494; 21 Manitoba L. Rep. 641; 98 S. W. 387; 149 Fed. 189-191, 104 S. W. 1061-6; 53 Pac. 637. A contractor is liable notwithstanding an honest mistake. 88 Ark. 213. Appellant was entitled to recover (1) liquidated damages and not the penalty, (2) for rebuilding the west wall and (3) $1,800 it paid its superintendent for services during the delay. Cases *supra*.

*M. Danaher and Palmer Danaher,* for appellee.

1. Provisions in a contract like this as to the time of completion may be waived. 6 Cyc. 65; 16 Abb. Pr. N. S. (N. Y.) 337; 20 Ohio 361; 2 Woodw. (Pa.) 332; 54 N. W. 743; 99 Ala. 620; 13 So. 118; 75 Atl. 25; 138 S. W. 1188-90. A large amount of the extra work was done by order of the owners, and the contractors did the work and furnished the materials under the honest belief that no damages would be claimed for delay. Cases *supra*.

2. The builder were bound to follow the plans and specifications. The west wall was built according to same and the builders were entitled to pay. 88 Ark. 213; 6 Cyc. 63; 81 Pac. 742; 131 *Id.* 642; 39 Atl. 795. If a building or wall falls from following defective plans, etc., before or after completion the builder is not liable. 142 Pac. 675; 41 N. W. 338; 39 Atl. 143. The defect was in the plans of the architect. There is no error in the instructions. Only *actual* damages were properly allowed. Cases *supra*.

McCulloch, C. J.   The plaintiffs, Monk & Ritchie, entered into a contract with the defendant and counter-claimant, Pine Bluff Hotel Company, to construct a six-story hotel building for the latter in the City of Pine Bluff for the contract price of $170,000.  The contract contains a stipulation that the building should be completed by October 1, 1912, and that in the event of delay in completion beyond that date the contractors should pay the sum of $100 per day "for each and every day the completion of the building is delayed beyond the time specified above, as liquidated damages by reason of such delay."  That clause of the contract contains the further stipulation as follows: "This is understood to be, and is a provision for damages liquidated that will be sustained by the owner in the event of delay of completion of said work after October 1, 1912, and the same is not a provision for a penalty."  There was a delay of nearly a year in the completion of the building, and the defendant filed a counter-claim asking for judgment for damages in the sum of $100 for each day of the delay.

According to the undisputed evidence, the plaintiffs performed extra work on the building, for which the price aggregated the sum of $8,863.07, making a total earned price, for work and material of $178,863.07.  Defendant has paid thereon the sum of $165,919.80, leaving a balance due of $12,943.27.  In addition to that, the plaintiffs claim the sum of $3,500, the price for rebuilding a retaining or area wall which fell down before the completion of the building and which plaintiffs rebuilt under the direction of the architect.  The wall fell the second time, and the defendant in the counter-claim asserts the right to recover the price of rebuilding it on the ground that the fault was with the plaintiffs and that they should rebuild the wall again or pay the cost of rebuilding it.  The disputed items are those concerning the rebuilding of the wall and the items of damages for delay in completing the building.

The court instructed the jury that the stipulation contained in the contract was for a penalty, and that the defendant should only recover actual damages sustained.

The jury by its verdict found for the plaintiffs for the undisputed sum of $12,943.27, and for the sum of $3,500 the price of rebuilding the wall, together with interest on those two items, and found in favor of the defendant in the sum of $16,027.20 for damages on account of the delay in completion of the work, leaving a balance due the plaintiffs of $1,978.20. The discussion here will be confined to the two points in the case, with reference to the stipulation for the payment of $100 per day for delay and the item for rebuilding the retaining wall.

The evidence shows that the defendant had an investment of from $350,000 to $375,000 in the building, which was constructed mainly for the purpose of operating a hotel. In addition to the hotel proper, there was a cigar stand which rented for $125 per month; banking room, which rented for $166.66 per month; a store room, which rented as a drug store for $50 per month; a barber shop, which rented for $50 per month; another store room, which rented for $75 per month; and a bar room, which was rented out part of the time after completion of the building. The hotel part was constructed to lease to some one operating a hotel and some of the other rooms were leased out before the contract of construction was let. Preparations were made to occupy the building before it was completed, and there was a large expenditure in anticipation of the operation of the hotel, the principal item being that of the salary of a superintendent, who was employed to superintend the operation of the hotel as soon as the building could be occupied for that purpose.

The court erred in instructing the jury that the stipulation was for a penalty, for it seems clear, under the law as established not only by the decisions of this court but of many other courts, that the stipulation constituted a valid contract for liquidated damages in the event of delay, and the contract is enforcible as such. The cases on this subject, which seems to settle the question in favor of defendant's contention that it was a stipulation for liquidated damages, may be cited as follows: *Lincoln* v. *Little Rock Granite Co.,* 56 Ark. 405; *Nilson* v. *Jones-*

*boro,* 57 Ark. 168; *Young* v. *Gaut,* 69 Ark. 114; *Blackwood* v. *Liebke,* 87 Ark. 545; *Kimbro* v. *Wells,* 112 Ark. 126. The courts are more and more disposed to follow the obvious intention of the parties as expressed in the contract, by upholding a stipulation of this sort as being one for liquidated damages unless it is clear that it was intended as a penalty in disguise. *Sun Printing & Pub. Co.* v. *Moore,* 183 U. S. 642; *United States* v. *Bethlehem Steel Co.,* 205 U. S. 105.

Moreover, it is not to be overlooked that the parties themselves in the contract expressly denominated the stipulation as being one for liquidated damages, and have written it into the contract that it shall not be treated as a penalty. Now, the language of such stipulation would be unavailing to control the meaning if it really was intended as a penalty, but when the terms of the contract leave a state of doubt as to what the parties intended, the surest test is to accept their own clear expression as to what was intended. In other words, the fact that the parties themselves have called it liquidated damages is forceful evidence of their real meaning and will control unless it otherwise appears that it was merely meant as a cover for a stipulation for penalty.

In *Wait* v. *Stanton,* 104 Ark. 9, we quoted with approval the following from Mr. Justice Agnew's opinion in *Streeper* v. *Williams,* 48 Pa. St. 450: "Upon the whole, the general observation we can make is that in each case we must look at the language of the contract, intention of the parties as gathered from all its provisions, the subject of the contract and its surroundings, the ease and difficulty of measuring the breach in damages, and the sum stipulated, and from the whole gather the view which good conscience and equity ought to take of the case."

(1) When that test is applied, it is easily seen that this contract was one for the payment of liquidated damages.

In *Blackwood* v. *Liebke, supra,* we said that "the question is not as to the status of the parties at the time when the contract terminated, but as to the status of the parties at the time they made the contract. It may be,

as the contract works out, that it would be easy to ascertain the damages for the breach of it, or to prove that there were none. But if the status of the parties at the time of the contract was such that it would be difficult or impossible to have anticipated the damage for a breach of it, and there was a positive element of damage, then under the authorities there is no reason why that may not be anticipated and contracted for in advance.''

It is contended by counsel for the plaintiffs that this case should be controlled by our decision in *Wait* v. *Stanton, supra.* The facts of that case were, however, altogether different, as it was a contract merely for the construction of a building for no other purpose except to rent; the rental value, which was the true measure of the damages, was easily ascertainable and the stipulated amount to be paid was greatly out of proportion to damages which would probably result from delay. In the present case we have before us a contract for the construction of a very large building to be used for different purposes, where special damages might reasonably be expected to flow from delay in the occupancy. The proof shows, as a matter of fact, that considerable inconvenience, injury and perhaps loss of profits did result from the failure to complete the building according to the terms of the contract, and the stipulated damage was not out of proportion to the probable actual damage. When we place ourselves in the position of the parties when they made the contract, it is easy to see that they had damages in contemplation which were not easily ascertainable and that they elected to agree upon the damages in advance. This, they had a right to do and there is no reason why the court should disturb that agreement and arbitrarily say that the contract was one for a penalty. We are of the opinion, therefore, that the court erred in its instruction, and that for that reason the judgment must be reversed and the cause remanded for a new trial.

(2) It is further contended by the defendant, which is the appellant here, that the court erred in its instruction as to the item of $3,500, the price of rebuilding the wall. The testimony on the part of the plaintiffs concern-

ing that item tended to show that they constructed the area wall strictly in accordance with the plan and specifications and under the direction of the architect, and that the wall fell either by reason of defects in such plan and specifications or by reason of the fault of the defendant in turning water in behind the wall which caused it to crumble and fall. On the other hand, the testimony adduced by the defendant tends to show that the wall fell by reason of faulty construction. The court gave the following instruction on that subject:

"V.  In order to entitle plaintiffs to recover the cost of rebuilding the retaining wall the burden is on them to prove by a fair preponderance of the evidence that they built the same in accordance with the plans and specifications of the architect and used such reasonable degree of care and skill and took such precautions as are ordinarily taken by contractors in doing work of this kind and that the failure and collapse of the wall was owing to the erroneous, defective and insufficient plan and specifications furnished by the architect and not to the manner of its construction. They must further show by a like preponderance of evidence that such errors, defects and insufficiencies in the plan and specifications for said wall as furnished by the architect were not such as to be readily discovered by the use or ordinary knowledge, skill and care on part of plaintiffs, and that plaintiffs, exercising such skill and care, could not reasonably have foreseen that the wall would prove insufficient for the purpose intended and would probably collapse or break down. If you find these facts so proven and that the wall was rebuilt by plaintiffs according to the original plan and specifications at the request of the superintendent of construction employed by defendant to supervise the erection of the building, then you should find for the plaintiffs for the cost of rebuilding the wall, as shown by the evidence."

"VI.  If you find from the evidence that the plan and specifications for the wall furnished by the architect were proper and sufficient and that it gave away and fell because it was not built according to the plan and specifications so furnished, or because the plaintiffs failed to

use ordinary and reasonable care for its support and protection, or for both of these reasons, combined, and if you further find that the wall again fell because of or for the reasons above enumerated, then defendants are entitled to recover the reasonable cost of repairing or replacing said wall, as shown by the evidence."

It is insisted that those instructions were not correct, and counsel for defendant rely principally upon two Texas cases which hold, in effect, that one who enters into a contract to construct a building without requiring from the other party a guaranty of the sufficiency of the plan and specifications can not relieve himself of liability for failure to complete the work by reason of defects in such plan and specifications. In other words, that if the contractor follows the plan and specifications, which prove defective and cause the building or the improvement to fall before completion, the loss is upon the contractor and not upon the owner. *American Surety Co.* v. *San Antonio Loan & Trust Co.*, 98 S. W. 387; *Lonergan* v. *San Antonio Loan & Trust Co.*, 104 S. W. 1061. Those cases sustain the contention of counsel, but they do not appeal to us as being correct, and they are clearly against the weight of authority on that subject. The rule is, we think, clearly laid down as follows: "Where the builder performs his work strictly in conformity with plans and specifications, he is not liable for defects in the work that are due to faulty structural requirements contained in such plans and specifications, and may recover under the contract, unless he has warranted that the plans and specifications are correct." 6 Cyc. 63; *MacKnight-Flintic Stone Co.* v. *The Mayor,* 160 N. Y. 72, 54 N. E. 661; *Bentley* v. *State,* 73 Wis. 416, 41 N. W. 338; *Huetter* v. *Warehouse & Realty Co.,* 81 Wash. 331, 142 Pac. 675.

The New York court, speaking through Mr. Justice Vann in the case cited above, said: "The fault of the defendant's plan would not prevent the plaintiff from recovering payment for good work done and good materials furnished precisely as the defendant required. The reasonable construction of the covenant under consideration is that the plaintiff should furnish the materials and do

the work according to the plan and specifications, and thus make the floors water-tight, so far as the plan and specifications would permit.''

Our conclusion on this branch of the case is that the instructions given by the court were as favorable to defendant as it could ask. We refrain from expressing any opinion as to other instructions, for the reason that the plaintiffs have not appealed.

Reversed and remanded.